UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EDWARD H. FLINT                                                                                      PLAINTIFF

v.                                                                        CIVIL ACTION NO. 3:12-CV-613

MARTIN MCDONALD                                                                                   DEFENDANT

### MEMORANDUM OPINION

Plaintiff Edward H. Flint brought this action *pro se* against defendant Judge Michael McDonald of the Jefferson County, Kentucky, Circuit Court, in his individual capacity. Currently pending before the court are three motions: (1) a motion by Judge McDonald to dismiss for failure to state a claim (DN 3); (2) a motion by Judge McDonald for sanctions (DN 4); and (3) a motion by Flint to disqualify the undersigned judge (DN 6).

Initially, the court will deny the motion for recusal filed by Flint. Motions for recusal are committed to the sound discretion of the district court deciding the motion. *See Youn v. Track, Inc.*, 324 F.3d 409, 422 (6th Cir. 2003). "A district court judge must recuse himself where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. This standard is objective and is not based on the subjective view of a party." *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993) (internal quotation marks and emphasis omitted).

In his motion, Flint states that the undersigned judge has been "bias[ed] against him" in "a number of cases" and that "based on the past history between Judge Simpson and Plaintiff Flint, that Judge Simpson['s] impartiality might reasonably be questioned." Flint does not provide any factual

detail to back up his assertions. Flint's general allegations of bias, unsupported by facts setting forth a personal or extrajudicial source of the bias, are insufficient to require recusal. *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005); *Youn*, 324 F.3d at 423. The undersigned notes that, although Flint does not so state in his motion for recusal, Flint has previously filed an action against the undersigned. Nevertheless, that is not a sufficient basis to establish that recusal is warranted. *Flint v. MetLife Ins. Co. Connecticut*, 460 F. App'x 483, 486 (6th Cir. 2011) (citing *Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006). Holding otherwise "would allow litigants to judge shop by filing a suit against the presiding judge." *In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005). The undersigned is aware of no grounds upon which his impartiality may reasonably be questioned in this case, and thus the motion for recusal will be denied.

We now turn to the motion of the defendant, Judge Martin McDonald, to dismiss Flint's complaint for failure to state a claim. Upon a motion to dismiss for failure to state a claim, a court "must construe the complaint in the light most favorable to plaintiff" and "accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations respecting all material elements" of the offense. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) (internal question marks omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Judge McDonald argues that he is entitled to absolute judicial immunity and thus Flint's complaint must be dismissed. In his complaint, Flint complains about actions taken by Judge

McDonald in a case in which Flint was a party in Jefferson Circuit Court. Specifically, Flint notes that Judge McDonald presided over a hearing on August 3, 2012 in that state court case, during which he made rulings and signed an order. Then, on August 8, 2012, Judge McDonald signed another order in the case. One of Judge McDonald's orders in the case apparently awarded attorney's fees to Flint's opponent. Flint stated that Judge McDonald was biased against Flint and that Judge McDonald took "actions" in the case that harmed Flint both "physically" and "mentally." Flint alleged that Judge McDonald "made up rulings" to fit what he wanted and "disregard[ed] rules and laws" to take advantage of an elderly pro se litigant. According to Flint, Judge McDonald's actions denied Flint various rights under the United States and Kentucky Constitutions, including Flint's rights to a fair trial, to file lawsuits in the state courts, to defend himself, and to freedom of speech.

Further, in his response to the motion to dismiss, Flint delves into more detail concerning the hearing held by Judge McDonald and the orders signed by him. Flint contends that at the August 3, 2012 hearing, Judge McDonald let the attorney for Coach House, Inc., the plaintiff in that case, address the court, but would not let Flint, the *pro se* defendant, address the court. The order signed by Judge McDonald after the hearing enjoined Flint from filing lawsuits against Coach House or any person associated with that company. The order also awarded attorney's fees and costs to Coach House, both for that action and for its defense of any action filed by Flint against it after October 18, 2011. Then, on August 8, 2012, after receiving an affidavit concerning the amount of attorney's fees and costs Coach House believed it was entitled to pursuant to Judge McDonald's August 3 order, Judge McDonald signed an order entering a final judgment against Flint.

It is well-established that judges are immune from suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9, 11 (1991). The doctrine protects a judge from lawsuits, not just from the assessment

of damages. *Id.* at 11. "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* Indeed, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978).

Here, the allegations in Flint's complaint plainly relate to actions Judge McDonald took while acting in the capacity of a judge and pursuant to his jurisdiction as a judge. Flint's response papers only make that more clear: Flint takes issue with Judge McDonald's handling of a hearing and with the propriety of orders issued by Judge McDonald. None of Flint's allegations can be said to relate to actions Judge McDonald took in the absence of jurisdiction. Accordingly, judicial immunity applies and Flint's claims must be dismissed.

Finally, the court turns to Judge McDonald's motion for sanctions against Flint. To say that Flint is an experienced litigator despite his *pro se* status would be an understatement. And amongst the many lawsuits Flint has filed are several against judges of the state and federal courts. In one such suit filed by Flint against United States Magistrate Judge Dave Whalin, United States District Judge John Heyburn issued a memorandum opinion and order, dated June 21, 2011, finding that the complaint should be dismissed *sua sponte* on the basis of absolute judicial immunity. *Flint v. Whalin*, 2011 WL 2471550, 3:11-CV-316-H, at *2 (W.D.Ky. June 21, 2011). Judge Heyburn proceeded to review Flint's "documented history of filing frivolous and unsubstantial litigation against state and federal judges in this Court." *Id.* In doing so, Judge Heyburn cited to eight cases filed by Flint against state or federal judges that were dismissed on the basis of absolute judicial

immunity. *Id.* Judge Heyburn noted that Flint's "submission of frivolous and duplicative lawsuits serves no legitimate purpose, places a tremendous burden on this Court's limited resources, and deprives other litigants with meritorious claims of the speedy resolution of their cases." *Id.* Thus, Judge Heyburn stated in bold text in the memorandum opinion and order:

> **Accordingly, Flint is <u>WARNED</u> that he will be sanctioned in the amount of $700.00 per suit should he file any additional lawsuits in this Court against federal or state judges on the grounds that he believes they were biased against him, made incorrect rulings, or otherwise improperly oversaw any of his cases. Additionally, filing any additional such lawsuits could result in the imposition of additional sanctions, including the imposition of filing restrictions.**

Despite that warning, Flint was obviously undeterred. Approximately 15 months after Judge Heyburn's warning to Flint, Flint filed the instant suit. This suit plainly falls within the terms of Judge Heyburn's warning: it is a lawsuit against a state judge on the grounds that the state judge was biased against him, made incorrect rulings, and improperly oversaw a hearing in the case.

The court finds that Judge McDonald's motion for sanctions should be granted. "Pursuant to its inherent powers, a court in the Sixth Circuit may impose sanctions to curb vexatious, bad faith litigation if the claims are meritless, the litigant knew or should have known that the claims are meritless, and the claims were filed for an improper purpose." *Halliburton v. United States*, 59 F. App'x 55, 57 (6th Cir. 2003) (citing *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512, 519 (6th Cir. 2002)). The Sixth Circuit in *Halliburton* found all three factors were met where a plaintiff had been "expressly advised that he could not file any more claims challenging his judgment of conviction and sentence without first obtaining permission to do so from the Court of Appeals," yet did so anyway. *Id.* The Sixth Circuit held that filing such claims "without authorization in the face of th[e] expressed advice and clear warning of a sanction if done anyway constitutes bad faith conduct that was properly sanctioned." *Id.* So too with Flint: after having

repeated frivolous cases against judges dismissed on the same basis, he was expressly warned as to the types of claims against judges that are frivolous and for which a court would sanction him. Flint nevertheless filed the exact type of claims he had been warned not to file; that constitutes bad faith. Accordingly, the court concludes that sanctions are appropriate. Further, the amount of sanctions set forth in Judge Heyburn's order – $700, double the cost of the filing fee – is reasonable.

Lastly, the court will issue the following warning to Flint to ensure that Flint is aware that any future frivolous lawsuits could result in even more severe sanctions: **Flint is WARNED that if he files any additional lawsuits in this Court against federal or state judges on the grounds that he believes they were biased against him, made incorrect rulings, or otherwise improperly oversaw any of his cases, he will face further sanctions, which could include, but are not limited to, monetary sanctions of more than $700 or the imposition of filing restrictions.**

A separate order will issue in accordance with this opinion.

January 17, 2013

Charles R. Simpson III, Judge
United States District Court